UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

THOMAS W. NAY,

    **Plaintiff,**

v.

    Case No. 2:07-cv-00563
    Judge George C. Smith
    Magistrate Judge E.A. Preston Deavers

COMMISSIONER OF SOCIAL
SECURITY,

    **Defendants.**

## ORDER

This matter comes before the Court for consideration of the June 29, 2010 Report and Recommendation. (Doc. 29.) In the Report and Recommendation, the Magistrate Judge recommended that the Court affirm the decision of the Commissioner of Social Security. On July 12, 2010, Plaintiff filed his Objections to the Report and Recommendation. (Doc. 31.) For the reasons that follow, Plaintiff's Objections are **OVERRULED** and the Report and Recommendation is **ADOPTED**.

### I. BACKGROUND

A. Relevant Facts[1]

The central issue of Plaintiff's Objections is the validity of Plaintiff's 2005 and 2006 IQ test results. The Plaintiff's school records provide earlier IQ results. The record reflects that the

---

[1] The Report and Recommendation provides a more detailed description of Plaintiff's testimony, Plaintiff's medical records and history, and the Commissioner's decision. (Report and Recommendation 2–10.) For the purposes of Plaintiff's Objections, the following section focuses on Plaintiff's alleged mental impairments.

Plaintiff took two Binet tests in the early 1970s, scoring 72 each time. (R. at 83.) In 1979, Plaintiff took a Weschler Adult Scale intelligence test. The test reflected that Plaintiff had a Verbal IQ of 76, a Performance IQ of 89, and a Full Scale IQ of 80. (*Id.*

In 2005, R.A. Lewis, Ph.D., administered further intelligence testing. Plaintiff scored a Verbal IQ of 60, a Performance IQ of 65, and a Full Scale IQ of 59 on the Wechsler Adult Intelligence Scale-III. (R. at 142.) Plaintiff also recorded a Weschler Memory Scale-III score of 57. (R. at 142–43.) Based on his examination of Plaintiff, Dr. Lewis diagnosed the Plaintiff with borderline intellectual functioning and dysthymic disorder, and assigned a global assessment of functioning ("GAF") score of 45. (R. at 143.)

Audrey Todd, Ph.D., administered a Wechsler Adult Intelligence Scale-III in January 2006. Plaintiff registered a Verbal IQ of 60, a Performance IQ of 63, and a Full Scale IQ of 58. (R. at 225.) In her psychological evaluation of Plaintiff, Dr. Todd stated that the "[t]est results appear to be an underestimation of Mr. Nay's true intellectual capacity. Specifically, while he did appear to be of below average intellectual functioning, the patient did not appear to be functioning as low as testing ostensibly suggests." (R. at 227.) Dr. Todd opined that it was possible that distress was hindering Plaintiff's performance, but further concluded that "test findings should be interpreted with caution." (R. at 228.)

Dr. Jeffrey Madden, a board certified psychologist, testified at the Plaintiff's March 2009 hearing before the ALJ. Mentioning Plaintiff's drop in full scale IQ score, from 80 in the 1979 test to 59 when Dr. Lewis tested, Dr. Madden testified that it was highly unlikely and outside the expected variation that the same person would receive these two different scores. (R. at 484, 488.) Dr. Madden stated that his only explanation for the drop in IQ scores, once again citing the

full scale IQ score of 80, was that Plaintiff was not giving his best effort. (R. at 490.) Therefore, Dr. Madden concluded that the 2005 and 2006 test scores were not valid. (R. at 501.) Dr. Madden also indicated that although Plaintiff's 2005 and 2006 test scores were similar, when considering those scores in the context of the earlier scores, they were still unreliable. (R. at 500–02.) Finally, Dr. Madden stated that the general rule in his field was that the highest IQ score is the truest representation of a person's ability. (R. at 498–99.)

Dr. Madden also criticized the work of Drs. Lewis and Todd. First, Dr. Madden found Dr. Lewis' work internally inconsistent because Dr. Lewis' diagnosis of dysthymia did not reflect the GAF of 45 that he assigned Plaintiff. (R. at 484–85.) Additionally, Dr. Madden implied that the Weschler Memory score Dr. Lewis assigned highly exaggerated Plaintiff's condition. (R. at 504–06.) In discussing Dr. Todd's evaluation, Dr. Madden noted that the 2006 evaluation indicated that the scores were an underestimation, but he also found Dr. Todd's speculation that distress caused Plaintiff's under performance inconsistent with Dr. Todd's other diagnoses. (R. at 489.)

In his March 2009 decision, the Administrative Law Judge ("ALJ") found that Plaintiff was not disabled. Specifically, the ALJ accepted Dr. Madden's testimony and gave it substantial weight. (R. at 323.) Based primarily on Dr. Madden's testimony, the ALJ determined that Plaintiff's 2005 and 2006 test scores were invalid. (*Id.*) Consequently, the ALJ found that Plaintiff did not meet the 12.05 Listings requirements.[2] (*Id.*)

---

[2] Plaintiff's 2005 and 2006 IQ test scores clearly meet the numerical IQ score requirements of Social Security Listing requirements 12.05(B) and 12.05(C) for mental disability. Accordingly, the validity of the 2005 and 2006 test scores were a central inquiry in the ALJ's decision.

3

B. The Report and Recommendation

In the Report and Recommendation, the Magistrate Judge recommended that the Court affirm the decision of the Commissioner of Social Security. Specifically, the Magistrate Judge found that Plaintiff had failed to establish that the ALJ was biased, that the ALJ did not err in his consideration of the medical vocational guidelines, and that the ALJ did not err in finding that Plaintiff failed to meet the 12.05 Listing requirements. With regard to Plaintiff's 12.05 Listings contention, the Magistrate Judge found that substantial evidence supported the ALJ's finding that the 2005 and 2006 were invalid. (Report and Recommendation 18.) The Magistrate Judge reasoned that Plaintiff's high school IQ scores, Dr. Todd's statement about the 2006 test being an underestimation, and Dr. Madden's testimony all supported the ALJ's decision that the later IQ scores were invalid. (*Id.*)

C. Plaintiff's Objections

In his Objection, Plaintiff focuses solely on the Listing 12.05 issue. Plaintiff specifically contends that the Magistrate Judge erred in her Report and Recommendation by concluding that substantial evidence supported the ALJ's finding that the 2005 and 2006 IQ scores were invalid. (Pl.'s Objections 2.) Plaintiff highlights the regulations requirement that the Commissioner use the lowest IQ score from an administered test in considering the 12.05 Listings. *See* 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00 D(6)(c). Plaintiff maintains Dr. Madden's testimony violated this directive because Dr. Madden's testimony was based on the highest high school IQ score of 89, rather than the lowest high school IQ score of 76.[3] (Pl.'s Objections 2–3.) According to Plaintiff,

---

[3] The Court notes from the outset that Plaintiff's characterization of Dr. Madden's testimony is misleading. Although Dr. Madden did state in response to counsel's question that the general rule in his field is that the highest IQ score is the most accurate (R. at 498–99), Dr.

4

the ALJ should have disregarded Dr. Madden's testimony because his testimony did not use the lowest IQ score from the 1979 IQ test results to access the validity of the 2005 and 2006 tests. (Pl.'s Objections 2–4.) Furthermore, Plaintiff maintains that the ALJ's decision disregarded the record as a whole. (Pl.'s Objections 2–3.)

## II. STANDARD

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The Court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also*, 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). Put another way, a decision supported by substantial evidence is not subject to reversal, even if the reviewing court might arrive at a different conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). "Substantial evidence exists when 'a reasonable mind could accept the evidence as adequate to support a conclusion [and] . . . presupposes that there is a zone of

---

Madden did not solely rely on Plaintiff's Performance IQ score in explaining his testimony. In fact the score Dr. Madden most frequently relied on to explain the discrepancies in the IQ testing was Plaintiff's 1979 full-scale IQ score of 80, which was the middle score of the 1979 test. (*See, e.g.*, R. at 484, 488, 500, 507.)

5

choice withing which the decision-makers can go either way, without interference by the courts.' " *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal; citation omitted). Even if supported by substantial evidence, however, " 'a decision of the Commissioner will not be upheld where the [Commissioner] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.' " *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

### III.  LEGAL ANALYSIS

In determining whether a person is disabled, an ALJ must go through a five step sequential analysis. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The third step of this analysis requires the ALJ to consider whether a plaintiff's "impairment(s) [] meets or equals one of our listing in appendix 1 of this subpart . . . ." *Id.* Listing 12.05 provides in part:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
> B. A valid verbal, performance, or full scale IQ of 59 or less;
> Or
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

20 C.F.R. § 404, Subpt. P, App. 1 § 12.05.

As the language of the requirements indicate, for the 12.05 Listings to apply, an IQ score must be valid. *Id.* "The I.Q. score must reflect the plaintiff's true abilities as demonstrated by his or her performance at work, household management and social functioning." *Brown v. Sec. of*

6

*Health and Human Servs.*, 948 F.2d 268, 269 (6th Cir. 1991) (citing 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00 B–C). Furthermore, as the United States Court of Appeals has noted "[t]he regulations do not limit the question of validity to test results alone in isolation from other factors." *Id.*; *see also Henry v. Barnhart* 156 Fed. Appx. 171, 173 (11th Cir. 2005) (internal quotation omitted) ("[T]he ALJ is allowed some leeway to evaluate other evidence . . . when determining the validity of an I.Q. score . . . ."). Furthermore, the regulations stress that "since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00 D(6)(a).

At the heart of Plaintiff's Objections is the interpretation of 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00 D(6)(c). In particular, this section provides that "[i]n cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00 D(6)(c). This Court has noted the basic application of this provision, stating, "Social Security Regulations allow a Plaintiff to use the lowest IQ score on a given test (verbal, performance, or full-scale) to satisfy Listing 12.05[] requirement[s] of a valid IQ score." *Purvis v. Astrue*, No. 3:09cv00129, 2010 WL 1258218, at *7 (S.D. Ohio, March 5, 2010). Implicit in Plaintiff's Objections is a broader interpretation of this regulation. Plaintiff contends that an ALJ, when using an earlier IQ test to access the validity of later IQ scores, may only consider testimony and evidence regarding the lowest IQ score from the earlier administered test. Consequently, Plaintiff maintains that the ALJ erred when he relied on

Dr. Madden's testimony because Dr. Madden's opinion was not based on the lowest score, the Verbal IQ of 76, from the 1979 IQ test.  (Pl.'s Objections 3–4.)

The Court finds that Plaintiff's interpretation of § 12.00 D(6)(c) goes beyond the meaning of the regulation.  Clearly, the regulation requires an ALJ to use the lowest valid score from a single test administration in determining whether any of those scores meet the numerical ranges of the 12.05 Listings.  Nevertheless, in determining the validity of relevant IQ scores, the ALJ has leeway to consider a variety of evidence, including other IQ tests.  *See Griffey v. Astrue*, No. 1:08-cv-786, 2009 WL 4396520, at *6 (S.D. Ohio Dec. 1, 2009) ("The wide discrepancy between two tests given ten years apart is further evidence of the questionable validity of the later tests.")  Furthermore, the United States Court of Appeals for the Sixth Circuit has affirmed an ALJ's reliance on "testimony from an expert that the lower [IQ] scores were of questionable validity." *Schuler v. Comm'r of Soc. Sec.*, 109 Fed. Appx. 97, 101 (6th Cir. 2004).  Similar to Dr. Madden in the current case, the expert in *Schuler* "told the ALJ that the lower scores should be disregarded, stating that 'you pretty much take the highest IQ ever recorded, unless there's been some brain damage from an injury' or some other factor that would account for a reduced score." *Id.* at *4.  Although the *Schuler* Court did not explicitly address the § 12.00 D(6)(c) issue Plaintiff raises in this case, it supports the notion that it was within the ALJ's discretion to rely on Dr. Madden's testimony in determining the validity of the 2005 and 2006 test scores.

Even assuming the ALJ should not have considered Dr. Madden's testimony regarding the higher 1979 IQ scores, a number of reasons still support the ALJ's decision to discount the validity of the 2005 and 2006 scores.  First, Dr. Madden's concern with the different IQ scores was not grounded exclusively on the raw numbers themselves.  His chief concern arose because of

the significant decrease in scores between the earlier and later tests. (*See, e.g.*, R. at 488.) Even if Dr. Madden had only been considering the lowest 1979 IQ score, the Verbal IQ of 76, Plaintiff's 2005 and 2006 Verbal IQ scores still constitute a drop of sixteen points from the 1979 score. Additionally, Dr. Madden testimony provided other reasons, outside the raw IQ scores, to doubt the validity of the examinations of Drs. Lewis and Todd. In particular, Dr. Madden found Dr. Lewis' evaluation "internally inconsistent" and provided a number of reasons why Dr. Lewis' assessments did not accurately reflect Plaintiff's capacity. (*See, e.g.*, R. at 484–85, 504–06.) Dr. Madden also explained that Dr. Todd had failed to adequately account for the tests "underestimation" of Plaintiff's mental ability. (R. at 489–90.) Notably, Dr. Todd's own evaluation indicates that the IQ scores should be "interpreted with caution." (R. at 228.) Accordingly, the Court find Plaintiff's contention that the ALJ's decision goes against the record as a whole to be unavailing.

## IV. CONCLUSION

For theses reasons, Plaintiff's Objections are **OVERRULED** and the Court **ADOPTS** the Magistrate Judge's Report and Recommendation (Doc. 29). The Commissioner of Social Security's decision is **AFFIRMED**.

/S/ George C. Smith
**GEORGE C. SMITH**
**UNITED STATES DISTRICT JUDGE**